UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Angi Schave, | Case No. 22-cv-1555 (WMW/LIB) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| CentraCare Health System, The Board of Directors of CentraCare Health System, and John Does 1 to 40, | |
| Defendants. | |

_____

Before the Court is Defendants' motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim on which relief can be granted, Fed. R. Civ. P. 12(b)(6). (Dkt. 8.) For the reasons addressed below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Angi Schave is a Minnesota resident who participated in two retirement benefits plans, a 403(b) plan and a 401(k) plan (collectively, the Plans), sponsored by Defendant CentraCare Health System (CentraCare), which provides health care to people living in central Minnesota. Defendant Board of Directors of CentraCare Health System (Board) acts on behalf of CentraCare to determine the appropriateness of the Plans' investment offerings and monitor investment performance. Defendants John Does 1–40 are unnamed members of the Board and additional officers, employees or contractors of CentraCare who serve as fiduciaries of the Plans.

CentraCare operates the Plans to provide retirement income benefits to its employees. The Plans are "defined contribution" or "individual account" plans as defined by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1002(34). Consequently, retirement benefits provided by the Plans are based solely on the amounts allocated to each individual's account. Employees of CentraCare who are 21 years of age or older are eligible to participate in the Plans after their first year of employment. Schave and other participants in the Plans have individual accounts into which they may contribute a portion of their salary. CentraCare contributes to participants' retirement savings by matching a portion of participants' contributions. Defendants are responsible for determining the appropriateness of the Plans' investment offerings and monitoring investment performance.

Schave commenced this action on June 13, 2022, alleging that, in the preceding six years (Class Period), Defendants breached their fiduciary duties when selecting and maintaining investments under the Plans. During the Class Period, Schave alleges, Defendants wasted the assets of the Plans and failed to prudently monitor the Plans' funds in several ways. Specifically, Schave alleges that Defendants failed to invest in less expensive share classes available to the Plans, invested in funds that charged excessive management fees, and failed to replace high-cost and underperforming funds with nearly identical lower cost and higher performing alternatives. As a result of these alleged breaches of fiduciary duties, Schave maintains, Defendants are liable under ERISA, 29 U.S.C. §§ 1105(a), 1109(a) and 1132(a)(2). Defendants move to dismiss Schave's

complaint for lack of subject-matter jurisdiction and failure to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

### I. Subject-Matter Jurisdiction

Defendants argue that Schave lacks Article III standing to the extent that she asserts claims arising from investments in which she did not invest during the class period.

If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).  Article III of the United States Constitution limits federal jurisdiction to actual cases or controversies.  U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012).  As a jurisdictional prerequisite, standing must be established before reaching the merits of a lawsuit.  *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).  To satisfy the requirements of standing, a plaintiff must (1) have suffered an injury in fact, (2) establish a causal relationship between the defendant's conduct and the alleged injury, and (3) show that the injury would be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560–61.

A defendant may challenge a plaintiff's complaint for lack of subject-matter jurisdiction either on its face or on the factual truthfulness of its averments.  *See* Fed. R. Civ. P. 12(b)(1); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In a facial challenge, as presented here, the nonmoving party "receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Under Rule 12(b)(6), a complaint must allege sufficient

facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). A district court also may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Defendants argue that Schave lacks standing to challenge investment options in which she was not enrolled because she does not have a particularized and concrete injury pertaining to those investment options. But the United States Court of Appeals for the Eighth Circuit has held that an ERISA plaintiff has standing to challenge an entire retirement plan, even if the plaintiff did not enroll in all of the challenged investment options. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). In *Braden*, the court concluded that the plaintiff had adequately alleged that his retirement account suffered because of the defendants' alleged breach of their fiduciary duties. *Id.* at 592. Consequently, the plaintiff could proceed "on behalf of the plan or other participants" even though the relief sought "sweeps beyond [plaintiff's] own injury." *Id.* at 593; *see also Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1301 (D. Minn. 2021); *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 792 (D. Minn. 2018). Under the reasoning in *Braden*, Schave has Article III standing to pursue the claims in this case.

Defendants seek to avoid this result by relying on *Thole v. U.S. Bank N.A.*, in which the Supreme Court of the United States held that the plaintiffs lacked standing to challenge

4

a defined-benefit retirement plan. 140 S. Ct. 1615, 1619 (2020). But the Supreme Court, in *Thole*, observed that "[o]f decisive importance to this case, the plaintiff's retirement plan is a defined-benefit plan, not a defined-contribution plan." *Id.* at 1618. Whereas participants in a defined-benefit plan will receive fixed payments each month that do not fluctuate with the plan's value or investment decisions, participants in a defined-contribution plan receive payments "tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Id.* Here, Schave challenges decisions pertaining to defined-contribution plans. *Thole*, therefore, is inapposite. Consistent with *Braden*, Schave has Article III standing to challenge the investment options under the Plans in this case.[1]

Accordingly, the Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied.

## II.     Adequacy of the Complaint

Defendants also move to dismiss Schave's complaint for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

---

[1] In a supplemental letter filed with the Court, Defendants direct the Court to the recent decision in *Fritton v. Taylor Corporation*, No. 22-cv-0415 (ECT/TNL), 2022 WL 17584416 (D. Minn. Dec. 12, 2022) to support their standing argument. In *Fritton*, the Court found that the plaintiffs could not establish standing because plaintiffs failed to make even basic allegations that they invested in one or more of the investment options that are the subject of their claim. *Id.* at *4. Here, in contrast, Schave's personal account statements—which the Court may properly consider when assessing a motion to dismiss—provide the necessary details to establish standing, such as what investment options Schave invested in. *See Parmer*, 518 F. Supp. 3d at 1301 (reviewing participants' account statements on a motion to dismiss). *Fritton*, therefore, does not alter the Court's standing analysis.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not prove her case at the pleading stage, nor do the pleadings require detailed factual allegations to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012) (observing that "specific facts are not necessary" and pleadings "need only give the [opposing party] fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks omitted)). To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim to relief. *Iqbal*, 556 U.S. at 678. Factual allegations that raise only a speculative right to relief are insufficient. *Twombly*, 550 U.S. at 555. A district court accepts as true all of the plaintiff's factual allegations and views them in the light most favorable to the plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). But legal conclusions couched as factual allegations are not accepted as true. *Twombly*, 550 U.S. at 555. And mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fail to state a claim for relief. *Id.*

Under ERISA, "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach," together with other enumerated relief. 29 U.S.C. § 1109(a). In some circumstances, a fiduciary also must be held liable for a co-fiduciary's breach of fiduciary duty. 29 U.S.C. § 1105(a). ERISA authorizes a plan participant to bring a civil action for

6

appropriate relief based on an alleged breach fiduciary duties under Section 1109. 29 U.S.C. § 1132(a)(2).

To state a claim for breach of fiduciary duty under ERISA, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594. ERISA imposes on fiduciaries "twin duties of loyalty and prudence." *Id.* at 595. Fiduciaries must act "solely in the interest of plan participants and beneficiaries" and carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* (quoting 29 U.S.C. § 1104(a)(1)). When evaluating whether a fiduciary acted prudently, courts "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Id.* "A prudently made decision is not actionable, in other words, even if it leads to a bad outcome." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) (citing *Braden*, 588 F.3d at 595).

"ERISA plaintiffs claiming a breach of fiduciary duty have a challenging pleading burden because of their different levels of knowledge regarding *what* investment choices a plan fiduciary made as compared to *how* a plan fiduciary made those choices." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Typically, ERISA plaintiffs "lack extensive information regarding the fiduciary's methods and actual knowledge because those details tend to be in the sole possession of that fiduciary." *Id.* (internal quotation marks and brackets omitted). Consequently, ERISA plaintiffs must "use the data about the

selected funds and some circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently." *Id.* (internal quotation marks omitted). "The critical inquiry, then, is whether the missing factual allegations are facts about the funds themselves, which ERISA plaintiffs can research, or facts about the fiduciary's internal processes, which ERISA plaintiffs generally lack." *Id.* at 822–23.

Schave's complaint identifies several distinct alleged breaches of Defendants' fiduciary duties. Defendants argue that Schave fails to state a plausible claim as to each alleged breach. Each alleged breach is addressed in turn.

### A. Failure to Select a Lower Cost Share Class

The complaint first alleges that several of the Plans' funds were invested in a more expensive "R5" share class instead of a less expensive "R6" institutional share class that was available.

In *Davis* and *Braden*, the United States Court of Appeals for the Eighth Circuit addressed similar allegations and held that the ERISA plaintiffs had plausibly alleged breaches of fiduciary duties. *Davis*, 960 F.3d at 483; *Braden*, 588 F.3d at 595. The complaint in *Davis* alleged that lower-cost institutional shares were offered for some investments and more expensive retail shares were offered for other investments, and that the minimum investment requirements for institutional shares were routinely waived. 960 F.3d at 483. The Eighth Circuit held that these allegations supported two reasonable inferences: first, that the defendant failed to negotiate aggressively enough to access the institutional share class, and second, that the defendant failed to pay close attention to the availability of lower-cost alternatives. *Id.* In *Braden*, the complaint similarly alleged that

8

the retirement plans were large enough to "have the ability to obtain institutional class shares" but, despite this ability, the plans included funds that offer "only retail class shares, which charge significantly higher fees than institutional shares for the same return on investment." 588 F.3d at 595. The Eighth Circuit concluded that these allegations were sufficient to support an inference of a "flawed" process even though the complaint did not directly address how the plan made its decisions. *Id.* at 596.

Here, Schave alleges that "more expensive share classes are targeted at smaller investors with less bargaining power, while lower cost shares are targeted at institutional investors with more assets." There allegedly "is no difference between share classes other than cost—the funds hold identical investments and have the same manager." Although the Plans at issue here allegedly qualified for a less expensive "R6" institutional share class, Defendants instead chose a higher-cost "R5" share class without receiving any additional benefits for plan participants. These allegations are materially analogous to the allegations in *Davis* and *Braden* and, therefore, support a plausible inference that Defendants breached their fiduciary duties under ERISA.

Defendants argue that, although the Plans' funds were invested in a more expensive "R5" share class, "the Plans effectively paid less for the R5 shares than they would have for the R6 shares" because the Plans negotiated rebates that offset the cost difference.[2] But an ERISA plaintiff is not required to "rule out every possible lawful explanation for the

---

[2] On a motion to dismiss in an ERISA case, a district court may consider relevant plan documents that are embraced by the pleadings. *Davis*, 960 F.3d at 484 n.3; *Meiners*, 898 F.3d at 823.

conduct" alleged in the complaint because imposing such a requirement "would invert the principle that the complaint is construed most favorably to the nonmoving party." *Braden*, 588 F.3d at 597 (internal quotation marks omitted). When an ERISA plaintiff's allegations support a plausible inference of mismanagement, dismissal is not warranted merely because the defendant has identified an alternative plausible inference. *Davis*, 960 F.3d at 483–84 (observing that a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely" (internal quotation marks omitted)).

Indeed, courts in this District and elsewhere have rejected similar arguments at the pleading stage. *See, e.g.*, *Forman v. TriHealth, Inc.*, 40 F.4th 443, 450 (6th Cir. 2022) ("Perhaps the plan has revenue-sharing arrangements in place that make the retail shares less expensive or that benefit plan participants on the whole. But at the pleading stage, it is too early to make these judgment calls."); *Parmer*, 518 F. Supp. 3d at 1305 (rejecting argument that defendants "were prudent in keeping [more expensive] class shares because they were able to secure lower overall fees for participants by applying a portion of the expense ratio to administrative fees"). A "contract between defendants and their recordkeepers—to which plaintiffs are not privy—cannot be used to defeat plaintiffs' claims at this stage." *Parmer*, 518 F. Supp. 3d at 1307 (citing *Braden*, 588 F.3d at 598). As such, Defendants' argument is unavailing.

Accordingly, Defendants' motion to dismiss Schave's breach-of-fiduciary-duty claim predicated on Defendants' alleged failure to select a lower cost share class is denied.

### B. Excessive Management Fees

The complaint next alleges that Defendants invested in funds that charged excessive management fees as compared to alternative funds identified by Schave.

In an ERISA case involving an investment-by-investment challenge, "a complaint cannot simply make a bare allegation that costs are too high, or returns are too low." *Davis*, 960 F.3d at 484. Instead, the complaint "must provide a sound basis for comparison—a meaningful benchmark." *Id.* (quoting *Meiners*, 898 F.2d at 822). "Comparing apples and oranges is not a way to show that one is better or worse than the other." *Id.* at 485. The Eighth Circuit has "been clear that the key to stating a plausible excessive-fees claim is to make a like-for-like comparison" by identifying "similar plans offering the same services for less." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022).

Here, the complaint compares the fees charged by fifteen funds in the Plans to the fees charged by alternative index funds. But the complaint acknowledges—and the fund prospectuses confirm—that the Plans invested in actively managed funds, whereas the alternative funds identified by Schave are passively managed funds. A comparison between passively managed funds and actively managed funds generally is not meaningful because such funds have different investment strategies that involve "different aims, different risks, and different potential rewards." *Davis*, 960 F.3d at 485; *accord Parmer*, 518 F. Supp. 3d at 1306. Indeed, courts have recognized that it is "[l]ittle surprise" that "actively managed funds, which require considerable judgment and expertise, charge more than passively managed funds, which require little judgment and expertise." *Forman*, 40 F.4th at 446 (internal quotation marks omitted).

Schave acknowledges that courts have rejected comparisons between actively managed funds and passively managed funds. She seeks to distinguish those cases, however, arguing that the "critical difference in this case is that, when an actively managed fund measures its own fees or performance against index funds or other passive investment vehicles, an actively managed fund *by its own terms* has selected a passive fund for its comparator." But Schave's complaint does not allege facts supporting this purported "critical difference." And even if she alleged such facts, an investment fund's choice of comparators has no apparent relevance to whether a plaintiff's choice of comparators satisfies the legal requirements for stating a plausible claim to relief.

For these reasons, Defendants' motion to dismiss Schave's breach-of-fiduciary-duty claim is granted to the extent that it is predicated on Defendants' alleged selection of funds that charged excessive management fees.

### C.  Investment Performance

The complaint also alleges that Defendants failed to replace high-cost and underperforming funds with "nearly identical" lower cost, higher performing alternatives.

As addressed above, the "key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison—a meaningful benchmark—not just alleging that costs are too high, or returns are too low." *Matousek*, 51 F.4th at 278 (internal quotation marks omitted). Fiduciaries "normally have a continuing duty of some kind to monitor investments and remove imprudent ones." *Id.* at 280 (quoting *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 741 (2022). "Nudging the complaint past the plausibility threshold

depends on the totality of the specific allegations," because "there is no one-size-fits-all approach." *Id.* at 281 (internal quotation marks omitted).

Schave's complaint compares the performance of 17 funds in the Plans to the performance of alternative index funds on a 5-year performance annualized basis as of December 31, 2021. When an ERISA plaintiff rests his or her allegations on such raw-performance comparisons, the complaint must allege sufficient detail to demonstrate that the alleged alternative funds provide a meaningful benchmark. *Matousek*, 51 F.4th at 280. If "the composition of the peer groups remains a mystery" because "there is no explanation of what types of funds are in each group, much less the criteria used to sort them," a court has "no way of knowing whether the peer-group funds provide a sound basis for comparison." *Id.* at 281 (internal quotation marks omitted). As such, a complaint should allege whether the alternative funds "hold similar securities, have similar strategies, and reflect a similar risk profile." *Id.* And a fiduciary's "choice of a particular fund is not flawed merely because of the existence of one fund that ended up performing better." *Meiners*, 898 F.3d at 823 n.3.

Here, although Schave's complaint broadly alleges that there were "hundreds of superior performing less expensive alternatives," the complaint identifies only one alleged comparator for each challenged fund for a 5-year period. The complaint offers no comparisons to other alternatives or other time periods. And the complaint does not appear to allege any facts pertaining to the composition of the alternative funds. For example, there are no allegations about whether the alternative funds hold similar securities, employ similar strategies or carry similar risks. To the contrary, as addressed above, Schave's

13

alleged alternatives are passively managed funds that, in contrast to actively managed funds, have different investment strategies that involve "different aims, different risks, and different potential rewards." *Davis*, 960 F.3d at 485; *accord Parmer*, 518 F. Supp. 3d at 1306. As such, the allegations are insufficient "to connect the dots in a way that creates an inference of imprudence." *Matousek*, 51 F.4th at 282 (quoting *Davis*, 960 F.3d at 486).

For these reasons, Defendants' motion to dismiss Schave's breach-of-fiduciary-duty claim is granted to the extent that it is predicated on Defendants' alleged failure to replace high-cost and underperforming funds with "nearly identical" lower cost, higher performing alternatives.

### D.     Revenue Sharing

The complaint also contains allegations about revenue-sharing payments to service providers, under a heading titled "Improper Revenue Sharing." But the majority of these allegations merely describe "revenue sharing" in general, without alleging anything specific regarding Defendants' conduct. Schave's only case-specific allegation pertaining to this issue is that "[a]ll of the JP Morgan SmartRetirement funds and a handful of other funds in the Plans share revenue with Fidelity." This allegation fails "to connect the dots in a way that creates an inference of imprudence." *Matousek*, 51 F.4th at 282 (quoting *Davis*, 960 F.3d at 486). As such, Defendants' motion to dismiss Schave's breach-of-fiduciary-duty claim is granted to the extent that it is predicated on allegedly improper revenue-sharing payments.

For all the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss Schave's breach-of-fiduciary-duty claim

predicated on Defendants' alleged failure to select a lower cost share class based on standing or failure to state a claim is denied. But Defendants' motion to dismiss is granted in all other respects.

### III. Alternative Request for Leave to Amend

In her response brief, Schave requests, in the alternative, leave to amend her complaint. "Although litigants are freely given leave to amend, they still have to follow the proper procedures." *Id.* (internal quotation marks, citations and brackets omitted). Schave has not filed a motion for leave to amend her complaint, nor has she followed the other procedures required to obtain leave to amend. *See* D. Minn. L.R. 15.1(b) (describing requirements for motion to amend a pleading). And "district courts are under no obligation to invite a motion for leave to amend if the plaintiff does not file one." *Matousek*, 51 F.4th at 283 (internal quotation marks omitted). For these reasons, Schave's improper request for leave to amend is denied.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss Plaintiff's complaint, (Dkt. 8), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

2. Plaintiff Angi Schave's alternative request for leave to amend the complaint is **DENIED**.

Dated: January 27, 2023        s/Wilhelmina M. Wright
                               Wilhelmina M. Wright
                               United States District Judge